Good morning, everyone. Welcome to today's Ninth Circuit arguments. I am Judge Sanchez and with me are Judge McEwen and Judge Paez We are happy to have you we have a Few cases that have been submitted on the briefs Gonzalez Rodriguez versus Bondi Actually, that's the only case that made on the briefs and submission has been deferred in st. Clair versus County of Oconagon and the first case we have is For argument is Daniel Walls versus Frank Bisignano and Counsel you may begin Thank you May it please the court My name is a Tom Castle Yonich, and I'm representing Daniel Walls in this appeal Walls has been unable to work since October 2018 due to the combined functional effects of many severe impairments including morbid obesity Chronic low back pain diabetes neuropathic pain bilateral hip abnormalities coronary artery disease with status post myocardial infarction obstructive sleep apnea hypertension psoriasis anxiety and depression The combined limitations from these impairments have prevented walls from performing any type of full-time competitive work The ALJ aired here by improperly rejecting the medical opinions of two treating medical sources ARNP Albertan and dr. Novotny and three examining medical sources. Dr. Singh. Dr. Ledesma and dr Marx all these medical sources opined that walls is more limited than he was found to be by the ALJ And the ALJ did not state any valid reason supported by substantial evidence for rejecting any of their opinions Counsel, let me ask you this because it seems as if the disagreement in this case is about Something that isn't in the record one way or the other about the mobility limitations because there are several I think the ALJ was pointing to many unremarkable findings in in the record of mobility and and bilateral movement and maybe a limp here and there but Nothing that would seem to suggest at least in the ILJ ALJ's view that That mr. Walls could not stand for more than 10 minutes at a time or sit for more than 30 minutes at a time And so there's it's it's not that the records say he can do these things It's just that they seem unremarkable. So what do we do with that on? unsubstantial evidence review well, your honor, there's a the biggest issue I've started with the medical evidence, which I think is a problem as because the Because the treating doctors who knew him Explained why they felt he had the limitations that he had and the ALJ's reasons for rejecting their opinions were not Valid reasons for by substantial evidence, but the bigger issue. I think that's I think very Very significant reversible error involves the ALJ's analysis of the issue. You just brought up The ALJ questioned Walls Integrity and his I mean basically accused him of malingering based in part on a report a that he found on the internet that isn't that he misinterpreted and So there there's several different issues there first that an ALJ is required to base their opinions and their decisions Evidence in the record if the ALJ wanted to rely on this This additional evidence. He could have proffered it to to Walls attorney and stated that I proposed to add this to the record and Here's why and then his attorney could have responded and said well, you're misreading it But um instead it just showed up in the decision And so the first problem is relying on evidence not in the record second problem is Misinterpreting that evidence and the third problem, which is the biggest one is using that to conclude that walls is a malingerer Lingering is that that's a harsh term and you've got to have something behind it besides the ALJ's Miscalculation. Mr. Yonish did any of the doctors or his Providers did any of them accuse him of malingering or diagnosed him as malingering or suggest that he was Exaggerating his conditions No Not to my knowledge and let me let me follow up on Judge Sanchez's Question, you know, one of the things that that struck me when I was reviewing this record was that the ALJ emphasizes His low back pain and then sort of You know points to the two doctors. Dr. Novotny and dr. Get I Geffen I guess it is a Geffen Who have different characterizations of that MRI of his lower back? And The ALJ seems to collapse that assessment of his low back pain with his neuropathy pain in his feet and his legs, which I guess is It comes from his diabetes, which is quite severe The ALJ doesn't really seem at least I couldn't find discussion in the ALJ's decision about that particular Situation with his legs and the neuropathy and his feet Which really seems to account and then that's that's seems to be based on objective evidence His diabetes is nobody disputes that he has diabetes quite the numbers are quite terrible And so when he testifies that he you know, it's painful when he walks And he can't sit for a long time the ALJ doesn't seem to account for that it am I right in the way I review the record I Believe you are and the the one thing you did not mention in that there was the also the hip pain Which is what? Dr. Geffen found was that it was um, he was couldn't he couldn't trace the some of the back pain to At least it was axial pain. It wasn't he couldn't see that. It was ridicule. There was ridiculopathy at that time but he did do a Hip injections to see if that was was helpful and it was helpful for three weeks so so I think the hip pain as well as something that the ALJ didn't take into account how how hip pain and and malfunctioning hips Would impact a person's ability to to stand and sit if they weigh over 400 pounds And at times well over 400 pounds Um What do we agree? Let me ask you this the other thing the ALJ pointed to was his activities of day his daily activities pointed to the fact that he Wanted he would go fishing go shopping grocery shopping mow the lawn I Can't remember what else he listed but he seemed to say the ALJ seemed to suggest that those those ALJ said That those activities seem to suggest That he's exaggerating Is that what do I do with that? Well, that's a good point. And I I did not represent walls at his hearing it would have been nice and this is part of why I believe the Attorney in District Court as well as myself concluded that this is it This case should be remanded for a new hearing and not for the award of benefits because I think that that is an unresolved question How do you resolve that? he reported to one of his doctors that he enjoyed fishing and He mowed and then at the same time in that the very same treatment note She reported that he was just doing terrible. He couldn't couldn't barely Support himself or get on the table. So, um, but I think that the fishing there's no there's no real the ALJ never Brought this up at the hearing now It would have been nice if his attorney had noticed this and brought this up and said well It says in this report that you were fishing. Were you actually fishing? and well, I Think back when I used to go fishing and you could you know, you could sit down and cast your line and quite a lovely day That's the thing we don't know what the details are and I think that's why this case should be read you matter for a new Hearing so that there can be further Why you know, so I guess part of what the ALJ was relying on was These activities that judge Pius was mentioning that seem fairly different than the Limitations that that that nurse Albertine and and dr. Novotny Say he can do And then you have I guess an assertion at some point that he lifted a 500-pound boat And that he was not very compliant with his medication and other things. Why aren't those things? Sufficient on substantial evidence review in your in your mind Why why shouldn't you know? Why shouldn't the ALJ be credited with making those findings to to? Indicate that the level of Impairment that he's expressing isn't lining up with the facts Well because the ALJ didn't bother to ask him about these things and to get Clarification and to get to develop the record by by pointing out. Well, it says here and it's like yeah, it was an idiot I pushed a boat and I got and I got injured so it's um and the activities overall do not none of those activities are actually inconsistent with the opinions of Aaron P Albert and and dr. Novotny because They're the the need to lie down to relieve pain the need to change positions That's fully consistent with with his limited activities And I'm out of time We'll give you any other questions. I'd be happy to answer them. We'll give you a little time on rebuttal. Thank you You Good morning, your honors. Good morning counsel. May it please the court? My name is Mike Mullen and I represent the Commissioner of Social Security in this matter this case turns on the ALJ's reasonable evaluation of appellant subjective symptom complaints and The medical evidence the medical opinion evidence and although appellant was limited to light work due to his obesity and other severe impairments The alleged severity of his symptoms were at odds with the objective medical evidence Statements that were themselves inconsistent his activities of daily living and limited non-compliant approach to treatment The objective medical evidence cut against the point subjective statements Appellant alleged that he could sit and stand for only 10 minutes again kind of the line being able to sit and have a nice Day fishing for example, your honor. He's saying that he can only sit for 10 minutes even and yet He's also saying that he could walk for just 50 feet at a time and that he couldn't walk on his own without an unprescribed cane This was simply not borne out in the record There were almost no instances of appellant using a cane and there were numerous and overwhelming notes throughout I don't I don't recall reading that. He said he needed to use the cane all the time. I Believe he did it page 57 of the record your honor He said if I that he needed I thought what he said was That if he didn't have somebody with him that he could leave some person he could lean on and you know Have somebody to some way he could lean on something then he would need a cane Yeah, there were equivocations about that. I mean, I don't know if that's an equivocation, but that's what I understood the records I didn't I didn't take the record to his testimony to be that he Needed a cane every time he stepped out of the house or even in the house but that there were times when he was when he was Out and about that he needed Something to lean on just somebody to help him along if he was out too long. And so the cane provided that Well, I think that you know the one thing about that, you know here's another thing about the cane the cane that kind of bothered me, which was that the ALJ said that he When he When he went in to see his doctors for a medical report he appeared with a cane Now that's not quite to two doctors. Now. That's not quite correct Because one of those instances dealt with dr. Geffen and he never when he went to go see dr. Geffen It wasn't to obtain a medical evaluation a medical disability report He only got he only did that that only happened on one occasion with dr. Novotny and The ALJ confuses that it's like the ALJ confuses dr. Dr. Geffen's Situation with dr. Novotny and that's not correct and you in your brief you say that well, that's just harmless air and that's I Would beg to differ with you on that because that's that testimony is important I think the ALJ's findings were a little bit more nuanced And so I think what you had was the ALJ identifying two instances of cane usage the first June 2019 at page 300 and that was with dr. Singh the second was With dr. Geffen yeah page 720 but he didn't go see but the ALJ says that we went on that occasion with dr. Geffen he went the reason why he put What the ALJ was suggesting? Well, he was going to see a doctor who's going to evaluate his condition Do a report and he shows up with a cane and I think you're suggesting by that that he's malingering So I think that what you're alluding to is at page 1,000 of the record where appellant presented with an antalgic gait I think that's different from him presenting with a cane So I think to some extent maybe the ALJ was discussing those three different medical opinions in the same breath But I think that you can delineate that the ALJ was talking about cane usage with the first two and then talking about antalgic gait With respect to the the medical record of you. Can you talk about the point of the ALJ confusing? dr. Geffen's evidence with with dr. Novotny Novotny because under our case law And I think under the regulations if you have two competing medical opinions the ALJ is tasked with you know deciding which one is more credible and explaining why and that didn't happen here because Doctor because the ALJ thought that what dr. Geffen was saying about the MRI scans being you know Not illuminating was what dr. Novotny said and that dr. Novotny was contradicting himself So why why is it harmless error in your in your view? Yeah I think actually the district court did a really nice job of explaining that and saying that even though the ALJ Misattributed that statement made by dr. Geffen to dr. Novotny And by the way, that was understandable there was a dr. Novotny was CC that the Signature portion of that medical opinion and I think that explains the ALJ is confusion on that point But the district court did a really nice job of explaining that the inconsistency remains you had dr Novotny relying on an MRI to support his opinion and that MRI didn't support his opinion based on the ALJ's endorsement of The MRI interpretation that was actually done by dr. Geffen, that's not that's not the reasoning that the ALJ put forth Well, I think that for example, the ALJ was framing that as support ability when it probably related more to inconsistency because it was Again being presented another question that I had a problem with when I reviewed this record which as I suggested at the outset when with Counsel for the appellant It appeared to me That the ALJ just collapses his analysis of the foot pain Neuropathy And they ain't you know, I've got lower extremity with the lower back pain and he doesn't do a separate analysis of that and there was no question here, but that diabetes was a severe condition correct in Second prong or whatever it is and You know diabetes There's a lot of tests. There's a lot of evidence in there about what he suffered from was neuropathic Diabetic neuropathy or whatever it is Which if you know, which is can be very painful Extremely painful and somebody who and the the doctor I think was not wanting Novotny or so one of them refers to his excessive weight Which makes it even more difficult for the for the guy to walk now, am I miss it? Am I? Misunderstanding what the ALJ did there? Well, I think part of there really is no analysis about The neuropathy. Well, I think you have to read the ALJ's decision I did a whole and so yes at step to the ALJ found that diabetes was a severe impairment As well as obesity and so the ALJ took those into account when formulating the residual functional capacity But again, when you read the ALJ's decision as a whole, I think the ALJ did provide analysis that spoke to Diabetes and neuropathy and I can point to a couple of different instances of that the first is that the ALJ particularly in discussion of Nurse Albertans opinion the ALJ did a really nice job of actually explaining that there's no evidence of swelling here Which you would expect to see with diabetic neuropathy on additionally the ALJ pointed to The the appellants Non-compliance with recommended treatment the appellant was at times non-compliant with even his diabetes treatment. In fact, if you look to page 315 he was not taking diabetes medication Against medical advice and that is a that is itself an independent Reason supported by substantial evidence for the ALJ to discount appellant subjective symptom statements. That also was inconsistent with dr I'm sorry rather nurse Albertans opinion as well as dr. Novotny's opinion and so I think again when you read the ALJ's decision as a whole the ALJ did touch on some of the concerns that That you pointed to your honor The Non-compliance with with the diabetes is that discussed in the ALJ's opinion? Yes, your honor at pages 27 and 31 of the ale of the decision and of the record in the ALJ's decision The ALJ talked significantly about that non-compliance of treatment and consistent with this court's precedent and Bunnell That is a valid reason for an ALJ. I you know, I don't remember I read the looked at the transcript a while ago, but Did they did mr. Walls offer an explanation as to why he Why he didn't take why he stopped taking his medication or whatever. Whatever the complaint is. I don't recall Yes, your honor. Actually the the record spoke for itself. You have multiple Hearing did mr. Walls testify as to why or was he asked? Why did you know it's reflected in the medical record? I believe so for example at page 795 of the record. He says I don't take medication because I quote hate pills And then similarly he left a hospital against medical advice because they were going to restrict his his eating and Again, if you look to this court's precedent in Molina Yes, the the there might be good reasons for a person not to follow treatment advice but having your food restricted and not liking to take pills are not good reasons to not follow medical advice in the face of alleged disabling debilitating symptoms Let me let me ask you the question that I started with your friend on the other side and that is I was trying to see in the record if there's something that speaks more directly to whether It supports or refutes the notion that mr Walls can't stand for more than 10 minutes or sit for more than 30 minutes, and I think the government's Argument is mainly that you have all these Doctors visits that say tandem gate and there's the absence of any mention of a mobility impairment is That but it doesn't say anything else one way or the other and so it doesn't necessarily directly disprove that you know that he can't do these things, but it doesn't shed light on it otherwise and And is it the if I'm right about this is that the government's view that if there if these mobility impairments existed You would think that it would have shown up somewhere in the record and so therefore The ALJ should be supported for that reason is am I characterizing the government's position correctly or no? I think that's I think that's fair and in fact the The ALJ is entitled to draw inferences from the record based on this courts precedent and McCree and here you had I believe discussed at page 31 of the record yet the ALJ identifying numerous records of Appellant basically demonstrating normal gait and again, that's not consistent with someone who's you know Has debilitating mobility issues as a result of either their low back pain or their hip or maybe diabetic neuropathy? I mean it spoke to all of that. So really the consistent ability of Appellant to demonstrate normal gait throughout much of the record is simply at odds with the alleged severity of a subjective symptom complaints and I Am out of time if you have any other questions your honor. I'd be happy to answer them No, no, no other questions, thank you. Thank you Mr. You know, I will put two minutes on the clock for you for rebuttal. Thank you You know with regard to that issue that Involving the difficulty the or the the gate issue Even AI and P Albertan didn't talk about his gait. She talked about his endurance She talked about he couldn't stand for more than 10 minutes because he would start to experience back pain She would talk about his need to lie down during the day because he couldn't tolerate any position and so the issue here with with regard to be able to walk into a medical office and walk out of the medical office isn't the issue the issue is Can he do it for any kind of length of time So, I don't think we're really disputing that he was able to walk into these offices and was not observed at many of his visits He is gay was normal for a few minutes That's not a very long walk But to be able to do it to be on your feet for a full day to be able to perform light work Is what could not be done with the combination of experiments including that she pointed out that If he One of the things you might measure was that he has to elevate his right leg throughout the day His right ankle would swell after he stands for 60 minutes Well, that's a lot of standing right there. But the point being that that was in 21. The other thing is that my Hoka my opposing counsel mentioned the though his limit his limitation to standing 10 minutes Their time periods where his weight was up to 500 pounds and he could barely stand walk at all and then there were times where his weight got down some he could walk a little bit more and that a report from him was consistent with that with the reports from dr. Devine and dr. L and Respectation or Albertan that he was at a time where he could only stand for for for 10 minutes or walk for 10 minutes because that was a bad period for him where it was hard and because of Neuropathic pain the last thing I wanted to mention is with regard to the diabetes medication He's really shown some very poor judgment in taking care of himself. That's pretty apparent from this record he left the emergency room and then ended up having a heart attack not that long afterwards And his diet would be if he were wise if he were caring for himself properly He would have been taking that medication But his his poor his poor compliance is directly linked to his poor insight into The severity of his medical conditions. I don't think that should be held against him. Thank you Okay counsel, thank you both very helpful arguments the matter will stand submitted
judges: McKEOWN, PAEZ, SANCHEZ